No. 33,352

In re Estate of D. M. Woodworth, Deceased; C. E. WOODWORTH, *Appellant,* v. BROTHER WOODWORTH, Executor of the Estate of D. M. Woodworth, Deceased, *Appellee.*

No. 33,353

In re Estate of D. M. Woodworth, Deceased; BROTHER WOODWORTH, Executor, *Appellant* and *Cross-appellee,* v. C. E. WOODWORTH, *Appellee* and *Cross-appellant.*

(67 P. 2d 553)

Opinion filed May 8, 1937.

*R. O. Robbins,* of Sedan, for the appellants.
*Carl Ackerman,* of Sedan, for the appellees.

The opinion of the court was delivered by

SMITH, J.: These are two proceedings that were instituted in probate court and appealed to the district court. Judgment was rendered.in one proceeding in favor of the executor of a will and in the other against the executor. The losing party in each case appeals.

The facts will be stated in case No. 33,353 first. That is the case where the executor is appealing to this court. The pertinent facts in the other case will appear as the facts in this case are related.

Brother Woodworth was appointed executor of his father's estate on February 25, 1932. Among the other heirs was one C. E. Woodworth. The executor did not file any inventory of the estate as he was required to do pursuant to the provisions of G. S. 1935, 22-501. Pursuant to the provisions of G. S. 1935, 22-518, the executor was cited by the court and ordered to return an inventory, which he did return on February 13, 1933, but without appraisement, as provided by G. S. 1935, 22-504. Following this the executor failed to file any report of his administration or to make final settlement of the estate until the heirs procured a citation on October 17, 1933, requiring him to do so pursuant to G. S. 1935, 22-903. The final report was not filed until February 22, 1934. On April 20, 1934, certain of the heirs filed their objections and exceptions to this report. The probate court heard and overruled the objections and made an order approving the report and ordering distribution. C. E. Woodworth appealed to the district court from this order. The district court made an extensive journal entry. Among other things the court found as follows:

"That the account rendered by the executor, Brother Woodworth, and the order of the probate court accepting the same are not satisfactory to this court, which feels that the appellant had good grounds to object thereto and entitled to be heard in some proceeding where the real facts can be investigated and his rights determined and protected."

The court then referred to an order that had previously been made by the district court in the case directing the executor to make a further and more specific accounting. With reference to this accounting, the court found—

"But the report of the said executor later made in pursuance of this order gave very little more information than was contained .in the final report in the probate court. About the only information given is in general terms and to the effect that he was not indebted to his father in any sum."

The trial court then made extensive findings with reference to the funds of deceased and the manner in which they were kept and that the executor and deceased had certificates of deposit sometimes in the name of the father and sometimes in the name of the executor. The court then made the following findings:

"This court believes, and finds the fact to be, that the payment of $714 upon the note of Brother Woodworth, at the Sedan bank, July 10, 1928, was with funds derived from the cashing, on that date, of the certificates of deposit of D. M. Woodworth, same being the difference in what was received as payment of said certificates and the $7,000 on that day invested by the said D. M. Woodworth in the government coupon bonds.

"This court believes, from all the evidence in this case, the attitude of the executor, and from all reasonable inferences to be drawn therefrom, and finds the fact to be, that at the time of the death of D. M. Woodworth he owned and had in the safety box in the bank at Sedan, used jointly by himself and Brother Woodworth, these bonds, unless the $2,000 which the executor says he loaned to his son, of the funds of his father, were from proceeds derived from said bonds and unless the balance had been used in some manner or for some purpose, all within the knowledge of the executor.

"So this court, in view of the foregoing, holds that the final report filed by the executor in the probate court of this county, should not have been received; that Brother Woodworth, by reason of his personal interest in the matters brought into controversy, was not, and is not, a suitable and proper person to administer the said estate; that he should be removed and some other suitable person appointed, and qualified, who should be instructed to bring an action in a court of proper jurisdiction against the said Brother Woodworth for the purpose of requiring him to account to said estate for the amount represented by the surrender and collection of the bank certificates on July 10, 1928, subject, of course, to any defense he may have against the claim to be made in such an action.

"This court further finds that under the situations as presented in this appeal and in appeal No. 5,600 filed in this court that certain errors and abuses have been committed in the probate court of this county in approving the report of Brother Woodworth as executor of the estate of D. M. Woodworth, deceased, and in refusing to remove said Brother Woodworth and in order to prevent and correct these errors and abuses, it is necessary for this court to make such an order, and for these reasons this court has jurisdiction to make such an order."

Following these findings the court gave judgment reversing the order of the probate court approving the accounting and ordering that the executor be removed by the probate court and some suitable person be appointed executor *de bonis non* with instructions to bring an action against the executor in some court of proper jurisdiction for the purpose of recovering from the executor the proceeds

of the certificate referred to or any indebtedness which the executor owed deceased at the time of his death.

For the sake of clarity a statement must be made here as to what the court referred when it spoke of appeal No. 5,600 in the above findings. Some time subsequent to the institution of the proceedings of which we have just given the facts an application had been filed by C. E. Woodworth, an heir, in the probate court to remove this executor. This relief had been denied in the probate court and C. E. Woodworth had appealed to the district court. Both these appeals were pending in that court and were decided by that court on the same day. In the appeal from the order refusing to remove the executor, the executor had moved in district court to dismiss the appeal on the ground that the statute did not provide for a right of appeal from an order of the probate court refusing to remove an executor. This motion was based on the holding of this court in *Graves v. Bond*, 70 Kan. 464, 178 Pac. 851. That was a case where certain legatees under a will had filed their petition asking that an executor be removed. The application was denied and the petitioner appealed from that order. A motion to dismiss the appeal in district court was filed on the ground that the statute made no provision for an appeal from an order refusing to discharge an executor or administrator. The district court adopted that view and dismissed the appeal. On appeal to this court it was held that since the statute in express terms gave the right of appeal in cases where the order of the probate court revoked letters testamentary or of administration, and no such a provision for appeal was provided in cases where the order refused to revoke the letters, the legislature must have had before it the whole matter of the right of appeal in such cases and have deemed it best that the matter of refusing to discharge an executor or administrator should be final with the probate court. This court in *Graves v. Bond*, supra, did not consider the final provision in the statute providing for appeals where it is provided that "appeals shall be allowed from the decision of the probate court to the district court in the following cases. . . . and in all other cases where there shall be a final decision of any matter arising under the jurisdiction of the probate court." (G. S. 1935, 22-1101.)

The trial court in the case we are considering reviewed *Graves v. Bond* and remarked that the above statute was not mentioned. The court expressed dissatisfaction with the decision generally, but

stated that it had been on the books so long without being reversed or the statute under which it was rendered commented upon, it appeared to have a binding effect and dismissed the appeal from the order refusing to discharge the executor. It should be noted that the trial court carefully refrained from saying anything in this decision which might have been construed as an approval of the report of the executor. This proceeding has been detailed here because it must be kept in mind in considering the effect of the next step taken by the executor after the rendering by the trial court of its decision in case No. 5,511.

The executor filed a motion to modify this judgment, alleging as grounds for this relief that when the trial court heard the appeal in case No. 5,600 and dismissed the appeal and refused to remove the executor, the question as to the removal of the executor became and was an adjudicated matter and the district court had no jurisdiction to make the order it made in case No. 5,511. A further ground urged in this motion to modify the judgment was that the appeal taken in case No. 5,511 was from the approval of the executor's final report and his order of discharge; that upon such an appeal the court had jurisdiction only to either approve or disapprove the final report and when it made the order that the executor should be removed it exceeded its authority. As a further ground for this motion the executor urged that when C. E. Woodworth elected to file his petition in the probate court for the removal of the executor prior to the disposition of the appeal in case No. 5,511 and the probate court having acted on this motion to remove and having made an order refusing to remove the executor and the district court having approved the order of the probate court in refusing to remove the executor, C. E. Woodworth was barred from further requesting the removal in another action. The motion to modify the judgment prayed for the striking out of all that portion of the judgment "that said executor should be removed and some other suitable person appointed and qualified who should be instructed to bring an action in a court of proper jurisdiction against the said Brother Woodworth."

This motion was denied and the executor appeals from the final judgment and from the order overruling the motion to modify the final judgment.

We shall consider first the appeal of C. E. Woodworth from the order of the district court in case No. 5,600 dismissing the appeal

from the order of the probate court refusing to discharge the executor. There are twelve specific grounds set out in the statute providing for appeals to the district court from orders of the probate court. (See G. S. 1935, 22-1101.) We have already noted the provision in this statute which gives the right of appeal in all cases from final orders. It should be noted that among these twelve provisions for the right of appeal there is no provision for appeal from an order refusing to probate nor from an order admitting a will to probate. This matter was presented to this court early. *Lawrie v. Lawrie,* 39 Kan. 480, 18 Pac. 499, held that an order refusing to admit a will to probate was a final order and appealable under the final clause in the act to which reference has been made. (See, also, *Durant v. Durant,* 89 Kan. 347, 131 Pac. 613, and *McCarthy v. Weber,* 96 Kan. 415, 151 Pac. 1103.) These opinions settled the question of whether an order refusing to admit a will to probate was a final order and appealable. In *In re Perkins,* 145 Kan. 611, 66 P. 2d 420, this court considered the question of whether an order admitting a will to probate was final and appealable. It will be observed that the twelve distinct grounds of appeal mentioned in G. S. 1935, 22-1101, do not mention an order admitting or an order refusing to admit a will to probate. Hence the question whether an order admitting a will to probate was an appealable order had to be decided under the general concluding provision of the above statute, which makes all final orders appealable, and this court held it was.

Following this decision and the authorities cited, it would not be difficult for us to hold that an order refusing to discharge an executor or administrator was a final order and appealable. Certainly there are elements of finality about an order refusing to discharge an executor when the record shows, as it does in this case, that there is such a conflict of interest between the executor as executor and the executor as a person that only an action by a disinterested party can cause the conflicting interests to be properly adjudicated. Such a decision would require the overruling of *Graves v. Bond,* supra. Our hand is stayed somewhat in this matter by the fact that the legislature at the last session amended G. S. 1935, 22-1101, by adding the words "or refusing to revoke" to the 9th subdivision of that section. See House bill No. 121 for the session of 1937. By the enactment of this amendment the legislature seems to have recognized that without such an enactment such an order was not

appealable. This view requires the affirming of the judgment of the trial court in case No. 5,600 (our number 33,352).

In the consideration of the argument of the executor in the appeal from case No. 5,511 (our number 33,353), we shall deal first with the contention that the action of the trial court in dismissing the appeal in case No. 5,600 was an approval of the action of the probate court in refusing to revoke the letters testamentary and constituted an adjudication of that matter so that it could not be dealt with in another proceeding. The answer to this argument is that an examination of the records leaves no doubt that the court in that action did not approve the action of the probate court. It is plain that the court did not approve it, but was of the opinion that it was without jurisdiction to grant the relief sought in the particular proceeding that was before it—hence dismissed the appeal. This cannot be regarded as any adjudication of the merits at all. This also applies to the third ground urged in the motion of the executor to modify the judgment.

This takes us to a consideration of the argument of the executor that when the appeal was taken from the order of the probate court approving the final report and the order of·discharge the only jurisdiction the court had was to either approve or disapprove the final report. In dealing with this question we shall consider whether the district court had jurisdiction to order the letters testamentary revoked as incidental to its jurisdiction to review the order approving the final report. We may start our discussion with the observation that here was a case where the court was satisfied that there was a conflict of interests between the executor as executor and the executor in his own proper person. The court found, in effect, that as long as Brother Woodworth remained as executor there could be no satisfactory adjudication of the rights of the parties. It must be borne in mind that the trial court did not adjudicate any property rights. The court merely found that there was such a conflict of interests in the case that a new executor was necessary. There can be no doubt that the appeal was a proper one. It was the final report of the executor. This was the report upon which a final distribution would have been based.

In the first place just what jurisdiction does a probate court have? Section 8 of article 3 of the constitution provides as follows:

"There shall be a probate court in each county, which shall be a court of record, and have such probate jurisdiction and care of estates of deceased persons, minors, and persons of unsound minds, as may be prescribed by law."

Section 10 of article 3 provides that all appeals from probate courts and justices of the peace shall be to the district court. We may look to the statutes for the delineation of the jurisdiction of the probate courts.

The probate court gets its jurisdiction to remove an executor from G. S. 1935, 22-323. That section provides, in part, as follows:

"When any executor or administrator shall, after being duly notified by a party in interest or cited by the court, neglect to render his accounts, and to settle his estate according to law; or when any executor or administrator shall become insane or otherwise incapable of discharging his trust or evidently unsuitable therefor; or when the court shall be satisfied that such estate is not being administered for the advantage of the real parties in interest, or that any executor or administrator has or is abusing his trust in any respect, it shall be the duty of the court, upon due hearing therefor had, to remove such executor or administrator."

The jurisdiction of the probate court is set out in G. S. 1935, 20-1101. That section provides, among other things, that—

"The probate courts shall be courts of record, and, within their respective counties, shall have original jurisdiction: First, to take the proof of last wills and testaments, and admit them to probate, and to admit to record authenticated copies of last wills and testaments executed, proved and admitted to probate in the courts of any other state, territory or county; second, to grant and revoke letters testamentary and of administration; third, to direct and control the official acts of executors and administrators, settle their accounts and order the distribution of estates; fourth, to appoint and remove guardians for minors, persons of unsound mind, and habitual drunkards, and make all necessary orders relating to their estates, to direct and control their official acts, and to settle their accounts; fifth, to bind apprentices, and exercise such control and make such orders respecting them and their masters as the law prescribes; sixth, to hear and determine cases of habeas corpus; seventh, to have and exercise the jurisdiction and authority provided by law respecting executors and administrators, and the settlement of the estates of deceased persons."

It will be noted that this section confers wide and sweeping authority on probate courts with reference to estates of deceased persons. We must look to other statutes for the machinery with which these powers may be put into effect.

We have seen that the duty is placed upon an executor to render a report of his administration within one year of his appointment. (See G. S. 1935, 22-901.) This the executor in this case had neglected to do. We have seen that it was necessary for the court to issue a citation for the executor under the terms of G. S. 1935, 22-903, in order to compel him to file a report. It will be noted that

this statute by reference to G. S. 1935, 22-518 to 22-520, confers upon the probate court the authority to order the executor to make an accounting, and to attach the executor if he refuses to make an accounting, and to commit him to jail for failure to account, or if he fails to make an accounting for thirty days after being committed to jail, or if the executor absconds or conceals himself so that an order cannot be personally served upon him, the probate court may revoke these letters.

In this case, after being cited to make an accounting, the executor saw fit to appear and file his final report. This is provided for by G. S. 1935, 22-904. This section provides:

"If any executor or administrator shall wish to make final settlement he shall file a report of his administration in the probate court and then publish for at least four consecutive weeks a notice in some newspaper published in the county wherein such final settlement is to be made, if there be a newspaper published in such county, and if there be not, then in some newspaper printed in this state having a general circulation in the county, which notice shall be to all creditors and others interested in the estate, that he intends to make final settlement on a date therein specified. And at such time, or as soon thereafter as the same can be heard, an application will be made for an order of the court finding and adjudging who were the heirs, devisees or legatees of the deceased. The court shall upon the hearing on the final settlement determine who are the heirs, devisees and legatees of the deceased and the record thereof shall be entered upon the journal of said court."

The record does not disclose whether the executor published the notice as required in this statute. Whether he did or not is of little moment here because the parties who are now objecting to the approval of his final report caused the citation to be issued which directed him to make the report. They also filed objections to the approval of it and all parties were in court. The court had all the matters before it as set out in their objection filed as reasons why the report should not be approved. This proceeding is one where all interested parties are entitled to be heard. That is the distinction between an annual and a final report. In *Musick v. Beebe, Adm'r,* 17 Kan. 47, the question was whether a settlement made by an administrator was a final settlement. No notice of it had been published. The court held that such a settlement was not in fact final. Of interest on our question the court said:

"But the final settlement of an estate is a more stringent and less easily avoided adjudication. It is more emphatically a judgment. True, it may by the probate court be opened up, and the administration continued; but this requires a direct proceeding therefor. While generally *ex parte,* yet it can only

be made upon notice. (Gen. Stat. 461, secs. 150, 151; *Winborn v. King*, 35 Miss. 157; *Revis v. Patty*, 43 Miss. 343.) The idea is, that it is that adjudication of the management of the estate, to which all interested are directly summoned, and by which all having a day in court are concluded. It is a direct adjudication that the estate is fully administered, and that means either that all the debts are paid or that all the assets are exhausted. It implies that the administrator has received not merely all the money he admits in his statement, but also no more." (p. 53.)

*Proctor v. Dicklow*, 57 Kan. 119, 45 Pac. 86, is a case where an heir filed an action to set aside a release he had given the administrator of the estate of his deceased son. The action also charged the administrator with maladministration. While this action was pending the administrator gave notice by publication of the final settlement of the estate. The heir ignored this notice and the final settlement and later pressed his action for maladministration. This court held that the notice brought the plaintiff into court and that the order of the probate court was a final adjudication. This court said:

"That court having jurisdiction to make distribution of the estate, it follows as a necessary incident to the jurisdiction that it can determine who is entitled to the funds, and all questions necessary to a proper distribution of the estate. The jurisdiction being ample, it must be held that Joseph Dicklow has had his day in court, and that the adjudication there made is binding upon him as against a collateral attack. . . . The final settlement and closing up of an estate is a judicial determination to which all interested are summoned, and by which all having a day in court are concluded." · (p. 125.)

To the same effect is the holding in *Scruggs v. Scruggs*, 69 Kan. 487, 77 Pac. 269. Since it is provided that one having a claim against the estate is barred from recovery if he does not appear in response to the publication notice and present his claim, it follows that any such person has the right to appear pursuant to the publication notice and have his objections heard to the final report of the executor.

G. S. 1935, 22-915, provides an additional remedy to one interested in an estate. It provides as follows:

"When the account is settled in the absence of any person adversely interested, and without actual notice to him, the account may be opened on his filing exceptions to the account at any time within six months thereafter; and upon every settlement of an account by an executor or administrator, all his former accounts may be so far opened as to correct any mistake or error therein, excepting that any matter of dispute between two parties which had been previously heard and determined by the court shall not be again brought in question by the same parties, without leave of the court."

It will be noted that the first part of this statute applies to cases where a settlement has been made in the absence of some person adversely interested and without his having actual notice. The latter part, however, gives the probate court the authority to open up any settlement of an executor to correct any mistake or error therein.

Our question is whether the probate court had jurisdiction to revoke the letters testamentary of the executor. The case is not precisely one where the whole matter was dealt with on the final report of the executor. At this stage we must remember that it was necessary to cite this executor to compel him to file an inventory and that it was necessary and he was cited to compel him to make a report and that pursuant to this citation he made the final report that is questioned here. At this point G. S. 1935, 22-323, becomes interesting. It provides, in part, as follows:

"When an executor or administrator shall, after being . . . cited by the court, neglect to render his accounts and to settle his estate according to law, . . . or when the court shall be satisfied that such estate is not being administered for the advantage of the real parties in interest, or that any executor or administrator has or is abusing his trust in any respect, it shall be the duty of the court, upon due hearing therefor had, to remove such executor or administrator."

This statute applies to the situation we are considering. In the first place it applies to a case where there has been a failure of the executor to render his accounts. In this case there had been such failure. In the second place, it covers a case where the estate is not being administered to the advantage of the real parties in interest, which is the case the district court found here. When all the provisions of this statute are construed together it becomes plain that it was intended to meet the needs of a situation where the probate court had found it necessary to cite an executor to cause him to render an accounting and after the accounting was made found it necessary in order to secure a proper administration of the estate on account of a conflict in interest to remove the executor. There was sufficient evidence in this record to have sustained the probate court had it concluded to remove the executor in the proceeding we are now considering. Furthermore, there can be no doubt that the district court had jurisdiction to hear further evidence on appeal. (See Woerner, The American Law of Administration, 3d ed., 1874.)

Since this was appealed to the district court and that court did order the removal of the executor it is now necessary for us to inquire as to what jurisdiction the district court obtained when the matter was appealed to it.

G. S. 1935, 22-1106, provides as follows:

"Where such an appeal is taken, the judge of the probate court shall transmit to the clerk of the district court a full and complete transcript of all the records and proceedings pertaining to the matter in which the appeal is so taken."

G. S. 1935, 22-1107, provides as follows:

"Upon the filing of such transcript and papers in the office of the clerk of the district court, the court shall be possessed of the cause, and shall proceed to hear, try and determine the same anew, without regarding any error, defect or other imperfection in the proceedings of the probate court."

It will be noted that pursuant to the above statute the trial in the district court is *de novo* and the district court is directed to hear, try and determine the cause anew without reference to any error, defect or other imperfection in the proceedings of the probate court.

In the case of *Stratton, Adm'r, v. McCandliss,* 32 Kan. 512, 4 Pac. 1018, Caleb Stratton died and left a will whereby he left the homestead occupied by himself and wife to his wife. His wife died shortly after. J. F. Stratton was the administrator of his father's estate. The demand of McCandliss to the amount of $596.50 was allowed by the probate court. The executor took no steps to sell the real estate to pay this debt. McCandliss filed a petition in the probate court setting out the necessary formal facts and praying that the administrator be required to take immediate steps to sell the real estate and from the proceeds pay McCandliss. The probate court, after a hearing, made the order as prayed for. On appeal the administrator first demurred on the ground that the petition did not state facts sufficient to constitute a cause of action. This was overruled and the administrator filed his answer. The district court found for McCandliss and ordered as follows:

"And the said probate court is hereby directed and ordered to discharge said administrator from the said trust in case he shall fail, neglect or refuse to so proceed to sell said real estate. It is further ordered and adjudged, that the costs of this appeal and proceedings be paid by said estate." (p. 516.)

It will be noted that the district court in that case ordered the administrator discharged if he failed to comply with the order. On

appeal to this court it was held that the probate court had authority to make the order in question. The language of the opinion in which we are interested is where this court said:

"On the authority of *Dayton v. Donart*, supra, we think that the land ordered to be sold by the probate court was and is subject to sale for the payment of debts of the estate of Caleb Stratton, deceased; and that the judgment of the district court directing the plaintiff in error as administrator of the estate to proceed forthwith to convert it into money, and for that purpose that he take the measures in the probate court as provided by law, is not erroneous. Section 194, ch. 37, Comp. Laws, confers authority on the district court to render such judgment, or make any order in that behalf that the probate court had the authority or power to make. Judgment affirmed." (p. 517.)

The statute on appeals of which the court speaks is the same statute we are now considering.

In *Hartwig v. Flynn*, 79 Kan. 595, 100 Pac. 642, deceased had left a will naming his son as executor. Among his effects were several notes. During the course of the administration of the estate some of the heirs filed a petition in the probate court to have the executor removed for unfaithful administration in failing to inventory these notes. The probate court found that the executor had failed to inventory these notes and ordered him to inventory them within fifteen days or be removed. He then filed a verified schedule of the three notes, stating adverse claims thereto. The heirs then asked for his removal, and he was removed. He appealed to the district court. The district court found that the heirs had good reason to believe that the notes were the property of the estate, that they were entitled to have the question of ownership settled in a proper proceeding and that the executor or administrator was not the proper party to bring such an action. The order of the court was:

"The court further finds that because of the interest and claims of the said executor, William Hartwig, and from his return made to the order of the probate court requiring him to inventory said notes as assets of said estate, that he, the said William Hartwig, is not a suitable person to administer said estate." (p. 597.)

The district court then ordered that the executor be removed "and deliver to the administrator to be appointed . . . all property . . . in his hands . . ." This order was not complied with and subsequently the probate court attempted to adjudicate the matter of the ownership of the notes. From a judgment having that effect the administrator appealed to the district court, where the

judgment of the probate court was affirmed. On appeal this court held that the probate court could not adjudicate the title to property, and since the district court had only the jurisdiction that the probate court had it could not adjudicate title to property either. The interest the case has for us is that this court approved the first order made by the district court where the district court recognized the necessity of an action in a proper court by a disinterested party to settle the questions involved. This court said on that question:

"Upon the first appeal the district court did not attempt to determine the title to the notes in controversy, and only found that the petitioners had good grounds to believe that the notes belonged to the estate and that an action should be brought in a court of competent jurisdiction to determine the title and ownership. This order left the way clear for a proceeding by the new administrator to bring a proper action to assert this dominion over these notes or to collect them." (p. 601.)

Once this proposition is recognized it follows that a court to which is appealed an order approving a final settlement has the jurisdiction to order the removal of an executor or administrator and the appointment of one who will cause the adjudication of the matters in the proper manner. The orderly administration of justice requires this. It would not do to hold that the end could be reached by the probate court ordering the executor to file an action. There is more involved in securing an adjudication than the institution of an action.

*In re Haas,* 97 Cal. 232, 31 Pac. 893, was a case where a probate court had attempted to adjudicate title to property. The supreme court of California held that the probate court could not do this nor could the district court do this on appeal. The court said:

"When it became apparent from the pleadings that matters of title to property were at issue, such matters should have been left to other courts for determination, care being exercised that all parties interested should be fairly and fully represented at the trial." (p. 234.)

There is no better way to exercise care that all parties interested in a trial be fairly and fully represented than the appointment of a disinterested party to represent them.

We have concluded that the order made by the trial court ordering the probate court to remove the executor was not in the nature of an exercise of jurisdiction beyond that conferred upon it by the notice of appeal, but was rather a means of securing the proper execution of the judgment that all agree the court had jurisdiction

to render. Once we reach the conclusion that the probate court had power to remove the executor because he was not administering the estate to the best interests of the real parties in interest, though the proceeding in which this condition came to the attention of the probate court was only a hearing upon the executor's final accounting, it follows that the district court had jurisdiction on appeal from an order approving the final accounting, to order the removal of the executor when it was satisfied and found as a matter of fact on substantial evidence that a proper adjudication of the rights of the parties could only be had through the appointment of a disinterested executor.

The judgment of the trial court in both cases is affirmed.

HUTCHISON, J., dissenting, as to the right of the district court to make an order directing the removal of the executor.